J-S42030-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: A.J.G.-B., A MINOR

APPEAL OF: J.S., FATHER

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 256 WDA 2014

Appeal from the Order entered January 17, 2014,
in the Court of Common Pleas of Allegheny County, Orphans'
Court, at No(s): TPR 066 of 2013

BEFORE:    PANELLA, J., JENKINS, J., and MUSMANNO, J.

MEMORANDUM BY JENKINS, J.:                **FILED NOVEMBER 12, 2014**

J.S. ("Father") appeals from the order entered on January 17, 2014, in
the Court of Common Pleas of Allegheny County, terminating his parental
rights to A.G.-B. (born in January of 2007) ("Child"), pursuant to 23
Pa.C.S.A. § 2511.[1]  We affirm and grant counsel's petition to withdraw.

This family became known to the Allegheny County Office of Children,
Youth and Families ("CYF") on March 16, 2011, after Mother was arrested in
the home where she resided with Child in Pittsburgh, Pennsylvania.  At the
time of the removal, Father resided in Pittsburgh, Pennsylvania.  At the
dependency hearing, Father testified that he was aware that Mother was
using drugs, was unable to ensure Child's safety, and testified to using
marijuana.  N.T., 1/8/14, at 14-15.  Additionally at the dependency hearing,
Father agreed that Child should be placed in maternal grandparent's care.
*Id.* at 14.  On April 11, 2011, Child was adjudicated dependent.  Two weeks

_____

[1] H.R.G.'s ("Mother") parental rights were terminated on October 16, 2013.
Mother is not a party to this appeal, nor did she file her own appeal.

later, Father moved to Florida. Father has not seen Child in the three years since. *Id.* at 19.

On April 13, 2011, CYF created Family Service Plan ("FSP") goals for Father. *Id.* at 18. Father's FSP goals were: (1) to complete drug and alcohol assessment and make himself available for urine screening; (2) to contact and cooperate with CYF; (3) to arrange visits and maintain contact with Child; (4) to take part in a psychological examination. *Id.* at 17-18.

On April 8, 2013, CYF filed a petition for the involuntary termination of Father's parental rights, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8) and (b). The trial court held a hearing on the petition on January 8, 2014. At the hearing, Latari Mitchell, a family service worker for CYF, and Father testified.

On January 17, 2014, the trial court entered its order terminating Father's parental rights to Child. On February 13, 2014, Father filed his notice of appeal and concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

As a preliminary matter, Father's counsel seeks to withdraw representation pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009). *Anders* principles apply to appeals involving termination of parental rights. *See In re S.M.B.*, 856 A.2d 1235 (Pa. Super. 2004). *Anders* and *Santiago* require counsel to: 1) petition the

Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him or her of the right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. *Santiago*, 602 Pa. at 173-79, 978 A.2d at 358-61; *In re Adoption of V.G.*, 751 A.2d 1174, 1176 (Pa. Super. 2000). Substantial compliance with these requirements is sufficient. *Commonwealth v. Wrecks*, 934 A.2d 1287, 1290 (Pa. Super. 2007). "After establishing that the antecedent requirements have been met, this Court must then make an independent evaluation of the record to determine whether the appeal is, in fact, wholly frivolous." *Commonwealth v. Palm*, 903 A.2d 1244, 1246 (Pa. Super. 2006) (*quoting Commonwealth v. Townsend*, 693 A.2d 980, 982 (Pa. Super. 1997)).

In *Santiago*, our Supreme Court addressed the briefing requirements where court-appointed counsel seeks to withdraw representation on appeal:

> Neither *Anders* nor [*Commonwealth v.*] *McClendon*[, 495 Pa. 457, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under *Anders* are references to anything in the record that might arguably support the appeal.

\* \* \*

Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago**, 602 Pa. at 176-177, 978 A.2d at 359-360. Thus, the Court held:

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-79, 978 A.2d at 361.

Instantly, counsel filed a petition to withdraw representation. The petition states that counsel conscientiously and thoroughly reviewed the record of the proceedings, and concluded that the appeal is frivolous. The petition also states that counsel informed Father by United States mail of his appellate rights. Application/Petition for Leave to Withdraw Appearance, filed 4/22/14, at 1. The letter, attached to the petition, advises Father of his right to raise questions about the jurisdiction of the court and to question the legality of the trial court's decision, and of his right to retain new counsel, proceed pro se, or to raise any additional points that he may deem worthy of consideration.

In her **Anders** brief, counsel provides reasons for her conclusion that the appeal is wholly frivolous. Fathers' Brief at 3-5. Counsel also refers to

items in the record that arguably support the appeal. Father's Brief at 3-5.

Additionally, counsel provides a well-written and detailed summary of the

facts and procedural history of the case, with citation to the record and

relevant law. *Id.* Thus, counsel has substantially complied with the

requirements of *Anders* and *Santiago*. As Father has filed neither a *pro

se* brief nor a counseled brief with new privately retained counsel, we review

this appeal based on the issues raised in the *Anders* brief:

> 1. Whether the trial court erred in determining [F]ather failed to parent [C]hild under section 2511(a)(1)?
>
> 2. Whether the trial court erred in determining that terminating [F]ather's rights would meet [C]hild's needs and welfare?

Father's Brief at 1.

Our standard of review regarding orders terminating parental rights is

as follows:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005). In termination cases, the

burden is upon the petitioner to prove by clear and convincing evidence that

the asserted grounds for seeking the termination of parental rights are valid.

*Id.* at 806. We have previously stated:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003).

The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa. Super. 2003). Additionally, this Court "need only agree with [the trial court's] decision as to any one subsection in order to affirm the termination of parental rights." *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*), *appeal denied*, 581 Pa. 668, 863 A.2d 1141 (2004). Accordingly, as the trial court focused on sections 2511(a)(1) and (5) in terminating Father's parental rights, we will focus on that sections for our review.

In terminating Father's parental rights, the trial court relied upon section 2511(a)(1) and (b) which provide:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.**--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

* * *

**(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511.

We have conducted a careful review of the briefs of the parties, the relevant law, the certified record, and the thorough opinion of the Honorable Kathryn Hens-Greco, dated April 19, 2014. We conclude that competent evidence supports the trial court's termination of Father's parental rights to Child under sections 2511(a)(1) and (b). We discern no abuse of discretion in the court's termination of Father's parental rights. Accordingly, on the basis of the well-analyzed discussion in the trial court opinion dated March 13, 2014, we affirm the order terminating Father's parental rights to Child under sections 2511(a)(1), and (b), and adopt that opinion as this Court's own. Additionally, we grant counsel's petition to withdraw.

Order affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/12/2014

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

IN RE: ADOPTION OF A.G.-B., a minor child : **CHILDREN'S FAST TRACK APPEAL**
                                   :
APPEAL OF: J.S., natural father; : Docket No.: JV-11-0624
                                   : TPR No.: 066 of 2013
                                   : 256 WDA 2014

OPINION

HENS-GRECO, J.                                           March 13, 2014

On January 8, 2014, following a one-day hearing on the above captioned matter, this Court issued an order granting the petition of the Allegheny County Office of Children, Youth and Families ("CYF") for involuntary termination of the parental rights of J.S. ("Father"), the natural father of A.J.G.-B., pursuant to 23 Pa. C.S.A. §§ 2511(a)(2), (a)(5), (a)(8), and 2511(b). For the reasons set forth below, the Order of this Court terminating Father's rights to A.J.G.-B. should be affirmed.[1]

CYF based its petition to terminate Mother's parental rights on 23 Pa.C.S.A. §§ 2511(a)(1), (a)(2), (a)(5), and (a)(8). These subsections provide for the involuntary termination of parental rights if the petitioner can establish any of the following grounds:

(a)(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties. [...]

(a)(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or

---

[1] The parental rights of H. R. G., the natural Mother of A.J.G.-B. and sibling, An. C. G.-B., were terminated on October 16, 2013. On that date, this Court also terminated the parent rights of R.E.B. III, who was the biological father of An.C.G.-B. and the legal father of A.J.G.-B, the subject of the instant appeal. However, this Court vacated the portion of its order terminating R.E.B.III's rights due to a lack of service. Furthermore, at the October 16, 2013 hearing, CYF originally did not seek to terminate J.S.'s rights to A.J.G.-B., because the agency did not initially consider him a party. But after reconsidering the issue, and in light of both J.S.'s and Mother's acknowledgement that J.S. is the biological father of A.J.G.-B. and the fact that CYF treated J.S. as a party to the dependency case, CYF did in fact petition the Court to terminate J.S.'s rights. This petition was heard on January 8, 2014 along with CYF's renewed petition to terminate R.E.B.III's rights. Only J.S. appeals.

1

mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. [...]

(a)(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child. [...]

(a)(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and the termination of the parental rights would best serve the needs and welfare of the child.

23 Pa. C.S.A. §§ 2511 (a)(1), (a)(2), (a)(5), (a)(8). Once the statutory grounds for involuntary termination of parental rights have been clearly shown, the Court must consider whether the termination would meet the needs and welfare of the child under subsection §2511(b):

(b) Other considerations. – The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6), or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petitions.

23 Pa. C.S.A. § 2511 (b). A party seeking termination of parental rights must establish by clear and convincing evidence that the parent's conduct satisfies at least one of the statutory grounds for termination; if it is determined that this burden of proof has been met, then the trial court must next consider the second step of the process, which entails a determination of whether termination best serves the needs and welfare of the child. *In re S.D.T., Jr.,* 934 A.2d 703 (Pa. Super. 2007). In reviewing an order terminating parental rights, the appellate court "is limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand." *In re S.H.,* 879 A.2d 802, 809 (Pa. Super. 2005).

Furthermore, the trial court is "the sole determiner of the credibility of witnesses and resolves all conflicts in testimony." *Id.*

In his Notice of Appeal and Statement of Errors, Father alleges that CYF failed to meet its burden of proof as to 23 Pa. C.S.A. §§ 2511 (a)(1), (a)(2), (a)(5), (a)(8).[2] *See* Statement of Errors, at ¶¶ 1-5. With the above standards in mind, and based on the testimony of two witnesses at trial (CYF caseworker Latari Mitchell and Father) and Dr. Neil D. Rosenblum's psychological evaluation (*see* CYF's Exhibit 1), the Court found the following facts, which persuaded the Court that grounds for termination had been firmly established:

A.J.G.-B. came into CYF care on March 16, 2011 after Mother was arrested in the home she shared with J.S. *See* Transcript of Testimony, dated January 8, 2014 ("T.T."), at 14. At the time of the removal, Father resided in Pittsburgh. A.J.G.-B. was adjudicated dependent on April 11, 2011. At that time, Father reported to the Court that he was aware Mother was using drugs and alcohol. *Id.* Father also reported that he was unable to ensure A.J.G.-B.'s safety, and that he was in agreement that the children stayed with maternal grandparents. *Id.*, at 14-15. Father also admitted to using marijuana. *Id.*, at 15.

Between the removal in March and the adjudicatory hearing in April, CYF met with Father and the grandparents to create a family arrangement. *Id.* However, approximately two weeks after the April adjudicatory hearing, Father chose to move to Florida. At the January 8, 2014 hearing, Father had not seen his child in nearly three years. In the weeks before Father left, CYF attempted to involve Father in the dependency case. CYF has permanency plan meetings where CYF creates family service plan ("FSP") goals so as to facilitate the reunification of parent and child. *Id.*, at 16-17. FSP goals are created in consultation with the parents and they are put in writing. *Id.*, at 17. CYF explained to Father what he would

---

[2] On March 12, 2014, this Court received a courtesy copy of a letter from the Superior Court addressed to Father's counsel indicating that the Notice of Appeal was untimely filed.

3

need to do in order to reunify with A.J.G.-B. *Id.*, at 40-41. It is also CYF's policy to try to assist an out-of-state parent whenever they contact CYF and ask for help to reunify with their child. *Id.*, at 44.

Father had three primary FSP goals: to complete a drug and alcohol assessment and make himself available for urine screening; to contact and cooperate with the agency; to arrange visits and maintain contact with the children. *Id.*, at 18. Other than being ordered to take part in Dr. Rosenblum's psychological evaluation, Father had no other FSP goal. He failed to complete all of them.

First, in terms of the drug and alcohol goal, Father did not make any progress on this goal in either Pittsburgh or in Florida. *Id.,* at 19. When Father still lived in Pittsburgh, CYF referred him POWER, an organization where he could complete the drug and alcohol assessment. Though Father moved almost immediately after the dependency adjudication, Father was still required to follow the FSP goals. *Id.* Father claims he has been drug tested on several occasions when seeking work, but he had not gone through the assessments with the Courts. *Id.*, at 56. As such, this Court cannot simply take Father at his word that he is living a clean and sober lifestyle given the circumstances that brought A.J.G.-B. into care, especially since he neglected to provide the Court with any tangible proof.

In terms of Father's obligation to keep in contact with CYF, Father has failed to complete this goal as well. After Father moved to Florida in April 2011, CYF received no communication from him until December 2012. *Id.*, at 19. Another 10 months lapsed before CYF and Father communicated again, this time in September 2013. *Id.*, at 23-24. Caseworker Mitchell spoke with Father for a third time on November 15, 2013. *Id.*, at 26. Of those three, Father affirmatively contacted CYF twice. *Id.*, at 27. On direct examination, Father made the case that he attempted to contact the caseworker but could not do so because the voicemail was full. *Id.*, at 35-36. And while Father acknowledged that he has had five different addresses since moving to Florida, he has only had one mailing address. *Id.*, at 60-61. It is his position that he often received court documentation late. That is, he allegedly received notice of a hearing perhaps the

4

day of or the day after the actual date. *Id.*, at 54. Father also contested that he had trouble reaching his former attorney. *Id.*, at 63.[3]

On this point, the Court cannot understate that Father chose to move over 1000 miles away from his child after she was adjudicated dependent. If communication between Father in Florida and persons in Pennsylvania was less than ideal, this Court cannot place the entire responsibility on CYF. Certainly, the Court is rarely persuaded by only one transgression when reaching its conclusions in a TPR hearing. By the same token, however, a course of conduct is very telling. Here, Father has displayed a course of such passive conduct, that the Court is left with no choice but to find that Father has failed to cooperate with CYF. Father admitted that he sent no letters to CYF indicating his interest with respect to A.J.G.-B. *Id.*, at 60. When asked whether anything stopped him from writing to CYF after experiencing difficulty getting the caseworker on the phone, Father stated, "No, there wasn't anything stopping me from reaching them, but I figured they would be listening to their voice mails and contacting me." *Id.* However if there were difficulties that occurred in this case, they cannot possibly outweigh Father's failure to be in contact with CYF or his attorney and address the problem if there even was one.

Finally, Father was required to visit and maintain contact with A.J.G.-B., and then later, he was required to participate in a psychological evaluation conducted by Dr. Rosenblum. Father did not complete this goal either. Father was originally order to visit with the A.J.G.-B. twice per month. After failing to maintain contact, visitation was reduced to once per month. In the years since leaving Pittsburgh, Father has never seen A.J.G.-B. Father argued that he did not have enough money to travel from Florida, nor could he afford to take off from work. *Id.*, at 56. Father did not ask CYF for financial assistance to make the trip, and CYF did not offer. *Id.*, at 45. Father stated that he tried to call A.J.G.-B., but no one answers the phone. *Id.*, at 41. As to what contact took place between A.J.G.-B. and Father, Caseworker Mitchell could

---

[3] The Court notes that Father's current lawyer, Attorney Marsha Grayson, replaced his former representation relatively recently.

5

only testify that Father sent Christmas gifts in December 2012 and that A.J.G.-B. would receive a rare phone call. *Id.*, at 29-30. Father failed to attend the psychological evaluation, because he said he could not afford to travel to Pittsburgh. Father alleges that he speaks with A.J.G.-B., but could not be specific as to when in the past three years. *Id.*, at 56-57. He testified that he sent A.J.G.-B. Christmas cards and presents. *Id.*, at 57. Father testified that he still has an Easter basket for A.J.G.-B. but found it difficult to send. *Id.* Finally, Father testified that he quit calling A.J.G.-B. after he "got told" to quit calling. *Id.*, at 58. The Court surmises that Father must have meant he was told to stop calling by Maternal Grandmother, but Father did not elaborate. The Court might have taken pause on this allegation if Father further alleged that he was continuously stonewalled from contacting his child, or at least something in this vain. But again, if this was in fact the case, it is telling that Father never brought this to the attention of either CYF or the Court. As such, the Court cannot find this allegation to be credible.

It is apparent to this Court that Father absconded from his parental duties by the terms of 23 Pa.C.S.A. § 2511(a)(1). Father's failure to visit the child or endeavor to make progress in even one of his FSP goals is strong evidence that Father has not remedied the conditions that led to the child's removal, per § 2511(a)(2). As a result, the child has been without parental care since April 2011, a great deal longer then the requisite time frame considered in §§ 2511(a)(5) and (a)(8). With these TPR conditions settled, this Court turns to the best interests of A.J.G.-B.

Since her removal from her parents, A.J.G.-B. has resided with maternal grandparents in a pre-adoptive home. *Id.*, at 33. That home is next door to where A.J.G.-B. lived with Mother and Father. A.J.G.-B. also lives with her two siblings. *Id.* She is in the same school district; she is in the same neighborhood as she was before CYF involvement. *Id.* A.J.G.-B. is able to be around her cousins and her medical needs are taken care of by Maternal Grandparents. *Id.* Dr. Rosenblum reported in his evaluation that A.J.G.-B. knows her Father lives in Florida, but she no longer remembers him that well. *See* Exhibit 1.

6

Dr. Rosenblum further testified that the Grandparents provide a great deal of care and stability to A.J.G.-B. *Id.* It is obvious that it is in the best interests of A.J.G.-B. to terminate Father's parental rights.

After a careful review of all the evidence set forth above, this Court concluded that CYF had carried the burden of proving by clear and convincing evidence that Father's parental rights should be terminated and that the child's best interests will be served thereby. For these reasons, the decision of the Court should be affirmed.

BY THE COURT:

_____, J.

7